RIMES *et al.* *v.* MARTIN, administratrix, *et al.*

No. 14746.   FEBRUARY 10, 1944.

276

*John F. Brannen,* for plaintiffs.

*W. G. Neville, George M. Johnston,* and *J. P. Dukes,* for defendants.

WYATT, Justice. ■ It is insisted by the defendants in error that Mrs. Rimes and her son Finus are estopped from prosecuting their claim against Zetterour for the fund in question because of the fact that Mrs. Rimes had knowledge of the pendency of the suit wherein Donaldson's administratrix and Graham, her judg-

ment creditors, were seeking to have applied to their judgments the surplus fund in Zetterour's hands arising from the sale of the property set aside to her and her son as a year's support. The fact that she had such notice, in the absence of her and her son being parties to the case, would not operate as an estoppel against them from claiming the fund by suit or otherwise. See, in this connection, *Houston* v. *Phillips,* 159 *Ga.* 344 (125 S. E. 713), where it was held that a widow was not estopped from seeking a writ of injunction against a sheriff and a purchaser from dispossessing her and her minor children from property set aside to her and the children as a year's support, which property the purchaser had bought at a sheriff's sale under a fi. fa. in his favor based on a common-law judgment on a debt not incurred for support and maintenance of the family, even though the widow knew the property had been levied on and advertised for sale, and did not file a statutory claim to prevent the sale.

■ "Where the property of a deceased person has been set apart, in conformity with the statute, as a year's support for the widow and minor children of the deceased, such property can not be sold at sheriff's sale under a fi. fa. based on a common-law judgment against the widow, based on a debt of the widow that was not created for the support and maintenance of the family." *Houston* v. *Phillips,* supra. See also, *Gibbs* v. *Land,* 136 *Ga.* 261 (71 S. E. 136); *First National Bank of Barnesville* v. *Sims,* 159 *Ga.* 253 (125 S. E. 476); *Morris* v. *Hasty,* 169 *Ga.* 781 (151 S. E. 490); *Simpson* v. *Kelley,* 171 *Ga.* 523 (156 S. E. 198); *Grant* v. *Sosebee,* 169 *Ga.* 658 (151 S. E. 336). Therefore it follows as a matter of course that when property set aside to a widow and minor child or children as a year's support has been sold under a power of sale in a deed to secure debt executed by the widow, and there are surplus funds in the hands of the purchaser at such sale arising therefrom, such funds may be made subject, in a proper proceeding, to an execution against the widow, provided such execution issued upon a judgment based on an indebtedness for necessaries of life furnished to the widow and her minor child or children. Thus, this case is resolved into the question whether the executions against Mrs. Rimes were based on debts of the widow for necessaries of life furnished by Donaldson and Graham to her and the minor child. Mrs. Rimes testified in reference to the debt on

which the execution in favor of C. D. Graham was based, as follows: "That debt of Mr. Graham represented a car I bought from him, and I drove it to Savannah and back and left it in my lane, and he come and got it. I bought a car from him, from Mr. Graham, and I drove it to Savannah once, and I went the next morning and told him that the car wasn't any good, and I wouldn't pay for anything like that; and in about three weeks he come and got the car. I just drove the car one time to Savannah and back and left it in the lane, and I went and told him, and he came and got it in about three weeks. I did not use this car. That automobile was not necessary for my support and maintenance." This testimony was uncontradicted. Certainly, as to this execution, the verdict was not supported by the evidence.

With regard to the two executions in favor of J. W. Donaldson, Mrs. Rimes testified: "That execution of Mr. Donaldson, $668.67, that money was not for support and maintenance. The execution for $200 principal, now $276.18; that was something my son gave, or my son got that money; I was involved in it because I endorsed the notes and my son got the money. I did not get any benefit of that money; my son got that money, that is, the $276 execution. Now the other money, $668.67, I remember getting that money from Mr. Donaldson; that money was not for support and maintenance. As to what I did with some of that money, some of it went for my son's benefit; he was in trouble over at Reidsville, and I paid out some of that money for him; that was not for support and maintenance; I think that was around $200; that was $200 of this $600-execution. As to what I did with any other of that money, I paid it on a car at Morris Chevrolet Company, some of it; I think I made about five payments there, and the amount of those payments was $37.50 even, and I made five payments to Morris Chevrolet. . . As to whether that car was used for my maintenance or my support, well I guess I could have got along without it all right, that car was not used for my maintenance and support; sure not; no it wasn't. I also made other payments for an automobile; I paid some in Metter . . it was about $90 shop bill. . . I also made other payments there on the automobile, I think it was six others that I made, the total amount of those was $23. I would not say that that car of the Franklin Chevrolet Company was used for my maintenance and support. It

was not. . . As to whether I was spending money right and left on cars, there was one or two of them that were torn up. My son, Leslie Rimes, tore them up. . . I do not admit that I represented to him [Donaldson] that I had to pay my taxes, [had] to pay surveyors to survey land, and I had made a bad crop; that I was destitute and needed money, I didn't do that. . . As to whether in reality the automobile I had was a necessity—I certainly could have done without it. I guess I did use that car in going to market, and coming to town, and attending to my business, and for ordinary purposes on the farm; but still I say I could have done without it, I could have stayed at home." The only witness testifying on behalf of the creditors who held judgments against Mrs. Rimes, as to the subject now under consideration, was Mrs. Lona Mae Alford (formerly Martin), who testified as follows: "I am the administratrix of the estate of J. W. Donaldson, deceased, . . my father, at the time that this money was loaned to Mrs. Rimes, was rather in his old age. I looked after his property for him, and ran his business for him. As to whether the money that my father loaned to Mrs. Rimes was to be used for taxes, and to pay the surveyor, etc.—that is what she asked for it for, and the balance of it was used, I think, for her support; she represented that she was destitute and needed the money on account of bad crops, etc. So far as me and my father knew, the money that was honestly borrowed was borrowed for the purpose of paying the taxes, and paying a surveyor, and for the support and maintenance of Mrs. Rimes and her children. . . As to what that money was used for, as to what the money went to, I wouldn't know, I wouldn't know whether it was maintenance and support only what she asked for it for. As to whether I would not know whether it went for maintenance and support or not—that is what she wanted it for. She did not tell me that she wanted it for maintenance and support, but she told my father. As to whether I personally know what she did with the money —he was staying at my house, and he did his business there, and she was telling us of the things she wanted. I did not have any conversation with Mrs. Rimes, I never did hear Mrs. Rimes tell Mr. Donaldson what she wanted with that money. I would not undertake to say what the money was used for after she got it, and I could not."

The only evidence as to the purpose for which the money was borrowed and used was the testimony of Mrs. Rimes. Her testimony is uncontradicted as to one of the executions, that it was based on a debt incurred by another son, and that her liability for this debt arose by virtue of her endorsement of the son's note. With reference to the other execution in favor of Donaldson, Mrs. Rimes's testimony is likewise uncontradicted. It discloses that the money was not used for the maintenance and support of herself and her minor child. Plaintiffs in fi. fa. sought to meet this testimony by the testimony of Mrs. Lona Mae Alford. While this witness testified that Mrs. Rimes had stated to Donaldson she wanted to borrow the money for the purpose of maintenance and support, yet she stated finally that she did not have any conversation with Mrs. Rimes, and did not hear Mrs. Rimes tell Donaldson what she wanted with the money. Her testimony, taken as a whole, shows that she had no knowledge of any statement by Mrs. Rimes as to the purpose for which the money was borrowed or for what it was used. Her testimony on this subject could amount to nothing more than an impression on her part, without any actual knowledge as to the fact, and is therefore without probative value. "Since ordinary hearsay testimony is not only inadmissible but wholly without probative value, its introduction without objection does not give it any weight or force whatever in establishing a fact." *Eastlick* v. *Southern Ry. Co.*, 116 *Ga.* 48 (42 S. E. 499); *Higgins* v. *Trentham*, 186 *Ga.* 264 (197 S. E. 862). Under the foregoing views, it must be held that the evidence was not sufficient to defeat the right of the widow and son to recover the money sued for, since it does not appear that the executions in favor of J. W. Donaldson and C. D. Graham against Mrs. Rimes were based on debts for necessaries furnished to the widow and son for support. In making this ruling, however, we do not hold that an automobile could under no circumstances be classified as a necessity to a widow or a widow and her family. We merely say that the evidence in the present case is insufficient to support a finding that the consideration on which the judgments of the creditors were based was furnished by such creditors to the widow for necessaries of life, or was used by her as such.

■ Special grounds one and two of the motion for new trial complain in effect that the trial judge should have instructed the

jury that they would be authorized, if in their opinion the evidence so justified, to find that the money represented by any one or more of the executions, or a portion thereof, was or was not used by the widow for maintenance and support; and that Donaldson and Graham would only be entitled to recover upon such executions, or portions thereof, as were found to be based upon debts for necessaries furnished by them to the widow. Since all property, or the funds arising from the sale thereof, set aside as a year's support for a widow and minor children, can only be used for that purpose, we see no sound reason why a judgment against such widow based upon a consideration, a part of which was expended by the widow for support and maintenance, and a part for purposes other than support and maintenance, should not be severable. Thus, the amount of the execution or executions, or portions thereof, so ascertained as having been incurred for support and maintenance would be collectible out of the property or funds constituting the year's support. Under such instructions, the jury could have found, if warranted by the evidence, in favor of the widow for such funds as would not have been subject to the judgments of Donaldson and Graham. Such a charge would be appropriate where the evidence is in conflict as to the use for which the funds in question were obtained.

The remaining special assignments of error are without merit.

The court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur, except Bell, C. J., and Duckworth, J., who dissent.*